# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA
\* \* \*

| | |
|---|---|
| Donald E. Mitchell J.R., <br><br>　　　　Plaintiff, <br><br>　v. <br><br> Jennifer Nash, <br><br>　　　　Defendant. | Case No. 2:19-cv-00190-GMN-DJA <br><br> **ORDER** |

　　　　Before the Court is Plaintiff Mitchell's motion for leave to amend his complaint (ECF No. 31), motion requesting the court to direct Defendants to file an answer to his amended complaint (ECF No. 32), and motion for a copy of his amended complaint (ECF No. 33).  Defendant Nash—the only remaining defendant after the Court's screening order of Plaintiff's initial complaint—has not filed a response to Plaintiff's motion to amend.  Plaintiff seeks to amend his complaint to name Defendants Dustin Mumpower, Kurt Krohm, Jason Satterly, Robert Varay, Patrick Ronczka, Huston Crutchfield, and Joshua Hunt[1] and to connect Defendants Brian Williams, Ronald Oliver, and John Borrowman with particular conduct.

　　　　Because the Court finds that Plaintiff has alleged colorable claims against Herrera, Williams, Oliver, Borrowman, and Nash, it grants Plaintiff's motion to amend (ECF No. 31) with respect to these five defendants.  Because the amended complaint has not yet been filed on the docket, the Court denies Plaintiff's motion requesting the court to direct Defendants to file an answer (ECF No. 32) as moot.  Finally, the Court denies Plaintiff's motion for a copy of the amended complaint (ECF No. 33).  The Court finds these matters properly resolved without a hearing.  LR 78-1.

---

[1] Plaintiff does not include Defendants Crutchfield or Hunt in his list of Defendants, but names both in the body of his amended complaint.  However, construing Plaintiff's complaint liberally, it appears that Plaintiff meant to name Crutchfield and Hunt.

## Background

**I.     Plaintiff's amended complaint (ECF No. 31).**

While incarcerated, Plaintiff asserts that prison officials confiscated three books titled: (1) ISIS: Inside the Army of Terror; (2) Taliban, the Unknown Enemy; and (3) Jihad Academy: A Former ISIS Hostage and Veteran, Middle East Journalism Explores Misperceptions. Plaintiff claims that prison officials Mumpower, Krohm, Satterly, Varay, Ronczka, Crutchfield, Herrera, and Hunt interrogated him about the books. Plaintiff claims Herrera asked him about his religion and stated that Herrera "wanted to make sure [Plaintiff] [was] not going to blow up the strip." Plaintiff asserts that he felt that he was in danger during the interrogation because one officer—who Plaintiff does not name—stated, "alright motherfucker, you know why we are here: those three books you ordered about some Muslim terrorist shit. Well, you are not getting them, end of discussion." Because of the interrogation, Plaintiff claims that he no longer practices Islam.

After the interrogation, Plaintiff filed a grievance that he was not given notice before his books were confiscated or an opportunity to send his books home. Plaintiff claims that Oliver denied the grievance, explaining that the books violated AR 750—which prohibits content advocating terrorism—which decision Plaintiff appealed. Williams then denied the appeal five months later, again citing AR 750. Plaintiff appealed again and did not receive a response until over two years later in which Borrowman denied Plaintiff's appeal again. Plaintiff claims that prison officials abused the grievance process by waiting for over two years to respond, rendering Plaintiff incapable of exhausting his administrative remedies. Plaintiff also asserts that prison officials—including Nash, for whom this Court allowed Plaintiff's prior claims to proceed—improperly withheld his books, which served no penological interest.

Plaintiff also claims that Williams, Oliver, and Nash put in Plaintiff's "I-File" that Plaintiff's yard nickname was "Jihad." Plaintiff claims that this makes him appear to be an extremist in front of the Nevada Parole Board, which reviews Plaintiff's record. Based on this nickname, Plaintiff claims that the Parole Board has denied his parole twice, both for the maximum amounts of time. Plaintiff claims that he also believes his name was placed on a terrorist watch list.

Case 2:19-cv-00190-GMN-DJA   Document 34   Filed 07/16/21   Page 3 of 10

**II.     Plaintiff's motion to direct Defendants to answer his complaint (ECF No. 32).**

In his motion, Plaintiff asks the Court to order the Defendants to respond to his amended complaint, which has not yet been filed on the docket. Plaintiff notes that discovery has closed. Plaintiff also informs the Court that he requested to settle the case for a music device that the Nevada Department of Corrections has "recently advertised to inmates" valued at $80.

**III.    Plaintiff's motion for a copy of his amended complaint (ECF No. 33).**

Plaintiff requests a courtesy copy of his amended complaint. He explains that he is not ready to file a dispositive motion "due to the fact that he has a very difficult task of getting NDOC staff to make copies of 'legal copywork request' in a timely fashion." Plaintiff thus requests a duplicate courtesy copy of his amended complaint to "prepare a defense…"

**Discussion.**

**I.      The Court grants Plaintiff's motion to amend his complaint in part.**

Federal courts have the authority to dismiss a case if the action is legally "frivolous or malicious," fails to state a claim upon which relief may be granted, or seeks monetary relief from a defendant who is immune from such relief. 28 U.S.C. § 1915(e). When a court dismisses a complaint under § 1915, the plaintiff should be given leave to amend the complaint with directions as to curing its deficiencies, unless it is clear from the face of the complaint that the deficiencies cannot be cured by amendment. *See Cato v. United States*, 70 F.3d 1103, 1106 (9th Cir. 1995).

Under Rule 12(b)(6) of the Federal Rules of Civil Procedure, a court may dismiss a complaint for failing to state a claim upon which relief can be granted. Thus, the court looks to questions of law when reviewing a complaint under 12(b)(6). *See Chappel v. Lab. Corp. of Am.*, 232 F.3d 719, 723 (9th Cir. 2000). A properly pled complaint must provide a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Although Rule 8 does not require detailed factual allegations, it demands "more than labels and conclusions" or a "formulaic recitation of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (*citing Papasan v. Allain*, 478 U.S. 265, 286 (1986)). The court must accept as true all well-pled factual allegations contained in the complaint, but the same requirement does not apply to legal conclusions. *Iqbal*,

Page 3 of 10

556 U.S. at 679. Mere recitals of the elements of a cause of action, supported only by conclusory allegations, do not suffice. *Id.* at 678. Where the claims in the complaint have not crossed the line from conceivable to plausible, the complaint should be dismissed. *Twombly*, 550 U.S. at 570. Allegations of a *pro se* complaint are held to less stringent standards than formal pleadings drafted by lawyers. *Hebbe v. Pliler*, 627 F.3d 338, 342, n.7 (9th Cir. 2010) (finding that liberal construction of *pro se* pleadings is required after *Twombly* and *Iqbal*).

Here, Plaintiff seeks to amend his complaint to add facts, defendants, and a claim for religious discrimination. Plaintiff names three defendants who he previously named in his first complaint: Borrowman, Williams, and Nash. Borrowman and Williams had been dismissed from Plaintiff's first complaint without prejudice. Plaintiff also adds eight new defendants: Oliver, Herrera, Mumpower, Krohm, Satterly, Varay, Ronczka, and Crutchfield. Plaintiff brings two claims: (1) violations of his First and Fourteenth Amendment Rights; and (2) violations of his Fourteenth Amendment equal protection rights.

### A.     Claim 1.

#### 1.     Plaintiff's claim for violations of his First Amendment rights against Oliver, Williams, Borrowman, and Nash passes screening.

Plaintiff has alleged a colorable claim for violations of his First Amendment rights against Oliver, Williams, Borrowman, and Nash. A regulation that impinges on First Amendment rights is "valid if it is reasonably related to legitimate penological interests." *Turner v. Safley*, 482 U.S. 78, 89 (1987). To determine whether a prison regulation is reasonably related to a legitimate penological interest, the court considers: (1) whether there is a valid, rational connection between the regulation and the interest used to justify the regulation; (2) whether prisoners retain alternative means of exercising the right at issue; (3) the impact the requested accommodation will have on inmates, prison staff, and prison resources generally; and (4) whether the prisoner has identified easy alternatives to the regulation which could be implemented at a minimal cost to legitimate penological interests. *See id.* at 89-91. The first of these factors is the most important. *See Prison Legal News v. Lehman*, 397 F.3d 692, 699 (9th Cir. 2005). "Some content regulation is permissible

in the prison context." *McCabe v. Arave*, 827 F.2d 634, 638 (9th Cir. 1987); *see Thornburgh v. Abbott*, 490 U.S. 401, 415-16 (1989).

Here, Plaintiff alleges a colorable claim for violation of his First Amendment rights by alleging that the deprivation of his books did not have a legitimate penological interest. First, Plaintiff claims that there is no connection between the deprivation of his books and the safety interests which Oliver, Williams, Borrowman, and Nash cited because Plaintiff only wanted to read the books for "information about the crisis in the Middle East." Second, because Plaintiff's books were taken due to their content, it is unlikely that there is an alternative means for Plaintiff to read them. Third, Plaintiff does not seek an accommodation, but a determination that the books would have no impact on inmates, prison staff, and prison resources because Plaintiff is not using them for anything but academic purposes. Finally, it appears that Plaintiff seeks—in the alternative— that the prison send his books home. Although the Court does not opine on whether Plaintiff can ultimately prove his claims, he has alleged a colorable First Amendment violation claim to pass screening. Because Plaintiff does not name which officer took his books, but alleges that Williams, Borrowman, Oliver, and Nash denied his grievances to return his books or send them home, Plaintiff's claim survives against Williams, Borrowman, Oliver, and Nash.

    2.    <u>Plaintiff's claim for violations of his Fourteenth Amendment due process rights against Oliver, Williams, Borrowman, and Nash passes screening.</u>

Plaintiff alleges a colorable claim for violations of his Fourteenth Amendment due process rights against Oliver, Williams, Borrowman, and Nash. The Due Process Clause of the Fourteenth Amendment protects individuals from arbitrary government action by prohibiting states from depriving people of "life, liberty, or property without due process of law." U.S. Const. Amend. XIV. Prisoners retain certain property interests despite being incarcerated, including in books. *See Cox v. Whorton*, No. 3:08-cv-00110-RCJ-VPC, 2011 WL 1075628 at *6 (D. Nev. Feb. 14, 2011) (citing *Caldwell v. Miller*, 790 F.2d 589, 608 (7th Cir. 1986)). Even when an inmate has a protected property interest in a particular item, however, it does not necessarily mean that the inmate may possess that item while incarcerated. *See Casper v. Baker*, No. 3:12-cv-00204-LRH, 2014 WL 177436, at *11 (D. Nev. Jan. 10, 2014).

Because the constitutional violation is the state's failure to provide due process, rather than the taking or loss itself, "it is necessary to ask what process the state provided, and whether it is constitutionally adequate. This inquiry…examine[s] the procedural safeguards built into the statutory or administrative procedure effecting the deprivation, and any remedies for erroneous deprivations provided by statute or tort law." *Zinerman v. Buch*, 494 U.S. 113, 125-26 (1990). Although pre-deprivation process is favored where possible, a post-deprivation hearing, or a common-law tort remedy for erroneous deprivation, may satisfy due process in some circumstances. *See id.* at 128. When determining whether post-deprivation remedies preclude liability under the Fourteenth Amendment, courts distinguish between unauthorized deprivations and authorized, intentional deprivations. *See Olasun v. Murguia*, No. 3:13-cv-00388-MMD-VPC, 2016 WL 11184222, at 4 (D. Nev. Nov. 2, 2016).

Neither a negligent nor intentional unauthorized deprivation of property by a prison official is actionable if a meaningful post-deprivation remedy is available for the loss. *See Hudson v. Palmer*, 468 U.S. 517, 533 (1984); *see Quick v. Jones*, 754 F.2d 1521, 1524 (9th Cir. 1985). By contrast, an authorized, intentional deprivation is actionable under the Due Process Clause, regardless of post-deprivation remedies. *See id.* An authorized deprivation is one carried out pursuant to established state procedures, regulations, or statutes. *See Logan v. Zimmerman Brush Co.*, 455 U.S. 422, 436 (1982); *Piatt v. MacDougall*, 773 F.2d 1032, 1036 (9th Cir. 1985); *see also Knudson v. City of Ellensburg*, 832 F.2d 1142, 1149 (9th Cir. 1987).

Here, Plaintiff asserts a colorable claim that Defendants took his books without due process. Plaintiff has a property interest in his books, although that does not necessarily mean he may possess them while incarcerated. Although he does not say which officer confiscated his books, Plaintiff claims that he was interrogated by officers about his books in a manner that, based on Plaintiff's allegations, could not be construed as a "pre-deprivation hearing." And while Plaintiff alleges to have followed a post-deprivation process by filing grievances—which Oliver, Williams, and Borrowman denied—it took Williams five months to respond and took Borrowman over two years. Plaintiff also appears to re-allege his claims against Nash, that she abused her discretion in withholding the books. Moreover, Plaintiff claims an authorized deprivation because officers cited

prison regulations in taking away his books.  Thus, even if the protracted grievance process constitutes a post-deprivation remedy, Plaintiff states a colorable claim for violation of his due process rights under the Fourteenth Amendment against Oliver, Williams, Borrowman, and Nash.

**B.     Claim 2.**

1. <u>Plaintiff's claim for religious discrimination under the Fourteenth Amendment against Herrera, Williams, Oliver and Nash passes screening.</u>

Plaintiff alleges a colorable claim for religious discrimination under the Fourteenth Amendment against Herrera, Williams, Oliver, and Nash.  The Equal Protection Clause of the Fourteenth Amendment requires the state to treat all similarly situated people equally.  *See City of Cleburne v. Cleburne Living Center*, 473 U.S. 432, 439 (1985).  The Equal Protection Clause protects prisoners from intentional discrimination based on their religion.  *See Freeman v. Arpaio*, 125 F.3d 732, 737 (9th Cir. 1997), *abrogated on other grounds* by *Shakur v. Schriro*, 514 F.3d 878, 883-84 (9th Cir. 2008).  To state a valid equal protection claim, a plaintiff must allege that the responsible officials intentionally acted in a discriminatory manner.  *See id.*

Here, Plaintiff makes a colorable claim of religious discrimination against Herrera, Williams, Oliver, and Nash.  As a preliminary matter, although Plaintiff mentions his race, he does not connect his disparate treatment with his race, only his religion.  Additionally, Plaintiff's claims against Mumpower, Krohm, Satterly, Varay, Ronczka, Crutchfield, and Hunt are unsuccessful.  Although Plaintiff asserts that the officers were present at the interrogation about his books, he does not allege what they did, let alone whether they treated him differently than other inmates not of Plaintiff's religion.  Additionally, although Plaintiff speculates that he has been placed on the terrorist watch list, he does not connect this claim with any person or explain how he knows this happened.

Plaintiff has, however, successfully alleged colorable claims against Herrera, Williams, Oliver, and Nash.  Plaintiff alleges that that Herrera performed part of the interrogation to "make sure [Plaintiff] was not going to blow up the strip," apparently because of Plaintiff's religion.  Because Plaintiff has alleged that Herrera conducted his portion of the interview in part due to Plaintiff's religion, Plaintiff has pled a colorable claim of discrimination against Herrera.  Plaintiff

also claims that Williams, Oliver, and Nash placed the false nickname, "Jihad," into his I-File to make him look like an "extremist" before the Nevada Parole Board. Because Plaintiff alleges that this nickname was based on his religion, he pleads a colorable claim for religious discrimination against Williams, Oliver, and Nash. Plaintiff's Fourteenth Amendment discrimination claim will proceed against Herrera, Williams, Oliver, and Nash.

**II.     The Court denies Plaintiff's motion to direct Defendants to answer.**

Plaintiff's motion for the Court to direct Defendants to answer is denied. Plaintiff appears to have conflated his motion to amend his complaint with his amended complaint. Because the amended complaint had not yet passed screening, the Defendants were under no obligation to answer it, thus his motion is moot. To the extent Plaintiff requests to settle the case, he should communicate this request to Defendants' counsel to begin settlement negotiations.

**III.    The Court denies Plaintiff's motion for a copy of his amended complaint.**

Plaintiff's motion for a copy of his amended complaint is denied. The Court is not responsible for providing copies of court filings to litigants. *See* 28 U.S.C. § 1915. There is a per page charge for copy work of $.10 per page for copies produced in an electronic format (CM/ECF) and $.50 for copies produced in a physical format. The Court cannot provide copies or mailing service for parties, even indigent plaintiffs proceeding *in forma pauperis*. If Plaintiff would like copies of items on the docket, he must fill out the appropriate paperwork and pay for them.

**IT IS THEREFORE ORDERED** that Plaintiff's motion for the Court to direct the Defendants to answer (ECF No. 32) is **denied** as moot.

**IT IS FURTHER ORDERED** that Plaintiff's motion for a copy of his amended complaint (ECF No. 33) is **denied**.

**IT IS FURTHER ORDERED** that Plaintiff's motion to file an amended complaint (ECF No. 31) is **granted**.

**IT IS FURTHER ORDERED** that the claims in Claim 1 shall proceed against Oliver, Williams, Borrowman, and Nash.

**IT IS FURTHER ORDERED** that the claims in Claim 2 shall proceed against Herrera, Williams, Oliver, and Nash.

**IT IS FURTHER ORDERED** that the claims against Mumpower, Krohm, Satterly, Varay, Ronczka, Crutchfield, and Hunt are dismissed without prejudice.

**IT IS FURTHER ORDERED** that the Clerk's Office is kindly directed to detach and file Plaintiff's complaint (ECF No. 31-1) and to issue summons to Defendants Oliver, Williams, Borrowman, and Nash and deliver the same to the U.S. Marshal for service.  The Clerk's Office is also kindly directed to deliver a copy of the amended complaint (ECF No. 31-1) to the U.S. Marshal for service.

**IT IS FURTHER ORDERED** that Plaintiff shall have thirty days in which to furnish the U.S. Marshal with the required Form USM-285.[2]  Within twenty days after receiving from the U.S. Marshal a copy of the Form USM-285 showing whether service has been accomplished, Plaintiff must file a notice with the court identifying whether the defendants were served.  If Plaintiff wishes to have service again attempted on an unserved defendant, a motion must be filed with the Court identifying the unserved defendant and specifying a more detailed name and/or address for said defendant or whether some other manner of service should be attempted.

**IT IS FURTHER ORDERED** that pursuant to Rule 4(m) of the Federal Rules of Civil Procedure, service must be accomplished within 90 days from the date this order is entered.

---

[2] The USM-285 form is available at www.usmarshals.gov/process/usm285.pdf.

**IT IS FURTHER ORDERED** that from this point forward, Plaintiff shall serve upon defendants, or, if appearance has been entered by counsel, upon the attorney(s), a copy of every pleading, motion, or other document submitted for consideration by the court. Plaintiff shall include with the original papers submitted for filing a certificate stating the date that a true and correct copy of the document was mailed to defendants or counsel for defendants. The Court may disregard any paper received by a District Judge or Magistrate Judge that has not been filed with the Clerk, and any paper received by a District Judge, Magistrate Judge, or the Clerk that fails to include a certificate of service.

DATED: July 16, 2021

_____
DANIEL J. ALBREGTS
UNITED STATES MAGISTRATE JUDGE